UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PRESERVE OUR ISLAND, a Washington Non-Profit corporation; PEOPLE FOR PUGET SOUND; a Washington non-Profit Corporation; WASHINGTON ENVIRONMENTAL COUNCIL, a Washington non-Profit Corporation;

    Plaintiff,

  v.

U.S. ARMY CORPS OF ENGINEERS, et al.,

    Defendants.

And

NORTHWEST AGGREGATES COMPANY,

    Defendant-Intervenor.

CASE NO. C08-1353RSM

ORDER ON MOTION FOR A TEMPORARY RESTRAINING ORDER

  The Court on December 19, 2008 denied plaintiffs' motion for a Temporary Restraining Order (Dkt. # 24) by Minute Order, as the courthouse was closed that day due to snow. This Order sets forth the Court's reasons for that denial.

  Plaintiffs' motion for a Temporary Restraining Order (TRO) was filed on Tuesday, December 16. Dkt. # 24. Defendants received notice of the motion that day through the Court's Electronic Filing System, and the Court set an expedited briefing schedule so that defendants had an opportunity to respond. Dkt. # 25. The motion is therefore not an *ex parte* motion governed by the standards set forth

TEMPORARY RESTRAINING ORDER - 1

in F.R.Civ.Proc. 65(b)(1). The Court has fully considered the parties' memoranda and supporting declarations, together with applicable law.

## PROCEDURAL BACKGROUND

Plaintiffs filed this action as a complaint for declaratory and injunctive relief on September 9, 2008. Dkt. # 1. Plaintiffs challenge the issuance of permits for the construction of a barge loading facility on the eastern shore of Maury Island, an island in the southern reaches of Puget Sound within King County, Washington. An amended complaint was filed November 19, 2008. Plaintiffs therein allege that agency actions leading to the issuance of the permits, and the permits themselves, violate the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.*; Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403; Section 7(a)(2) of the Endangered Species Act, 16 U.S.C. § 1536 ("ESA"); the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1855 *et seq.*; and the Administrative Procedure Act, 5 U.S.C. § 501 *et seq.* ("APA"). The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, as well as 16 U.S.C. § 1540(g)(1).

On December 16, 2008, plaintiffs filed both a motion for a preliminary injunction (Dkt. # 17) and this motion for a TRO. Both motions seek to halt defendant Northwest Aggregates' ongoing construction activities until the Court can reach a decision on the merits of the action. The motion for a preliminary injunction is set for hearing on January 8, 2009. This motion for a TRO seeks to halt construction activities immediately and until a decision is reached on the preliminary injunction. Plaintiffs contend that the construction activity poses a grave threat to Southern Resident orcas ("killer whales") which are feeding in the vicinity of Maury Island at this time.

## LEGAL STANDARD

A temporary restraining order (TRO) is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction. *See*, 11A Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 2951, at 253 (2d ed. 1995). A TRO is restricted to the "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (footnote omitted).

TEMPORARY RESTRAINING ORDER - 2

The standard for issuing a TRO is identical to the standard for issuance of a preliminary injunction. *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320 (N.D.Cal. 1995). In the Ninth Circuit, the traditional criteria for granting a preliminary injunction have been articulated as follows: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs: and (4) advancement of the public interest. *Textile Unlimited, Inc., v. A..BMH Co., Inc.*, 240 F. 3d 781, 786 (9th Cir. 2001); citing *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F. 2d 1197, 1200 (9th Cir. 1980). These factors were incorporated into a test under which the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised, and the balance of hardships tips sharply in the moving party's favor. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F. 2d 1197, 1201 (9th Cir. 1980). These two formulations were not separate tests, but represent a sliding scale on which the required degree of irreparable harm increases as the probability of success on the merits decreases. *United States v. Odessa Union Warehouse Co-op*, 833 F. 2d 172, 174 (9th Cir. 1987). Thus, "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *United States Forest Service Lands Council v. McNair*, 537 F. 3d 981, 987 (9th Cir. 2008).

Shortly after the Ninth Circuit's decision in *McNair*, the Supreme Court criticized the portion of the Ninth Circuit's standard which allows a preliminary injunction to be entered upon only the "possibility" of irreparable harm:

> We agree with the Navy that the Ninth Circuit's "possibility" standard is too lenient. Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction. . . . Issuing a preliminary injunction based only a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

*Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 375 (2008) (citations omitted) (emphasis in original). The Court characterized the Ninth Circuit's "possibility of harm" standard as "incorrect." *Id*. at 376. The Court stated the correct standard as follows: "[a] plaintiff seeking a preliminary injunction **must** establish that he is **likely** to succeed on the merits, that he is **likely** to suffer irreparable

TEMPORARY RESTRAINING ORDER - 3

harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 374 (emphasis added). While the Court did not directly address the Ninth Circuit's alternate "serious questions are raised" test, the mandatory language in this standard appears to close the door on the alternate path.

ANALYSIS

The Court finds that plaintiffs have not established their entitlement to a TRO, as they have not met all four mandatory requirements set forth in *Winter*.

(1) <u>Likelihood of success on the merits</u>: the Court is unable to access plaintiff's likelihood of success on the merits of the APA, ESA, or other claims, as the record is insufficiently developed. The Court therefore cannot determine at this time that plaintiffs are "likely to succeed on the merits" as required under *Winter*.

(2) <u>Likelihood of irreparable harm</u>: the harm alleged by plaintiffs is not harm to themselves but to the Southern Resident orca (*Orcinus orca*), which was listed as endangered under the ESA on November 18, 2005. 70 Fed. Reg. at 69903. Plaintiffs allege that construction activities, particularly pile driving, may cause disruption of the orcas' feeding at this critical time by acoustic interference with their echolocation of prey (mainly salmon), or by causing them to avoid the area due to noise levels.

The Court is mindful of the endangered status of the Southern Resident orca and the need to protect these mammals from harm, particularly after the recent loss of seven of their numbers. However, the declarations filed by plaintiffs, if they are considered by the Court[1], establish only the **possibility** of harm to the orcas from the construction activity, not that such harm is likely to occur. The declarations do not establish that the waters adjacent to the construction area are in fact a significant feeding area at this time—in other words that salmon are actually present there, and that the orcas are feeding upon them. Nor do they establish that orcas have been in or near the construction area at any time apart from

---

[1]Defendants have objected to the declarations of Amy Carey, Scott Viers, and David Bain, filed by plaintiffs in support of their motion, as they present material outside the record, which may not be used to attack the administrative decision at issue here. However, for the purposes of this TRO only, the Court has considered these declarations.

TEMPORARY RESTRAINING ORDER - 4

December 7, and a short appearance on December 12 near Brown's Point.[2] Declaration of Howard Garrett, Dkt. # 34.

The construction permit contains mitigation provisions which are designed to address possible harmful effects to the orcas if they enter the construction area. Plaintiffs assert that these mitigation measures—a bubble curtain to reduce underwater noise propagation, and a monitoring network to detect the presence of orcas, together with a requirement that in-water construction activities cease when orcas are present—will not work. However, that assertion is based on speculation. The record reflects that when orcas were present in the area on December 7, 2008, no in-water construction work took place at that time.[3]

In denying the TRO as to the request to stop construction entirely, the Court also ordered defendant Northwest Aggregates to strictly comply with the monitoring requirements, and to fully document both their monitoring efforts and the results. Such documentation shall be presented to the Court at the January 8, 2009 hearing, and defendant shall be subject to sanctions if the Order has not been followed. The Court shall also consider the evidence regarding effectiveness of the monitoring plan, or lack thereof, when it re-assesses the probability of harm at the preliminary injunction hearing.

(3) <u>Balance of hardships</u>: the harm that plaintiffs allege—the possible loss of one or more Southern Resident orcas—is unmeasurable in cost, but speculative as to the possibility of occurrence. The potential loss to defendant Northwest Aggregate from halting construction, on the other hand, can be described with reasonable certainty. Northwest has a limited window—until January 15, 2009—in which to complete construction of the loading facility. If stopped now, Northwest could not, under the conditions of their permit, resume work until August 15, 2009. The cost of demobilizing, storing, and

---

[2]This sighting was listed on the Orca Network website, www.orcanetwork.org, as "Saw **three orca fins** off Brown's Pt, near Pt. Defiance in **Commencement Bay**, at **10:30 am**".

[3]Plaintiffs' reply declaration asserts that Orca Network, not an environmental consulting firm hired by defendants to be responsible for monitoring (Grette Associates), actually detected the presence of the orcas on this date. Declaration of Howard Garrett, Dkt. # 34, ¶ 4. However, this declaration does not establish that the monitoring system does not work, as plaintiffs contend. Rather, it demonstrates that rapid communication and cooperation between Orca Network and Grette Associates can enhance the effectiveness of the monitoring system.

TEMPORARY RESTRAINING ORDER - 5

remobilizing the construction equipment if work is halted now, before completion and before the January 15 cut-off date, has been estimated at $607,000. Declaration of Eugene Quinn, Dkt. # 30-2, Exhibit D, p. 2-3.

In balancing these interests, the Court finds, on the basis of evidence available at this time, that the certainty of the potential loss to defendants, should the TRO be granted, outweighs the speculative loss articulated by plaintiffs, should the TRO be denied. This balancing is, however, subject to revision should plaintiffs come forward with evidence that demonstrates a real probability of harm, as even a slight degree of harm to the endangered species could outweigh the financial loss expected by defendants.

(4) The public interest: the public interest favors affording protection to the orcas over the commercial interests of defendant Northwest Aggregates. However, as noted above, the declarations and exhibits filed by plaintiffs in support of their motion do not establish the likelihood of harm to the orcas from defendants' construction activities at this time. The limited evidence now before the Court suggests that the monitoring plan was effective in stopping work while orcas were present in the vicinity of the work site on December 7, 2008. As noted above, the Court has directed defendant Northwest Aggregates to document in detail the monitoring efforts and the results, and to present this record to the Court at the hearing on January 8, 2009 so the Court can evaluate the effectiveness of the monitoring plan.

As to the agency defendants, the Court notes that actions proposed to promote and enhance orca protection have been set forth by defendant National Marine Fisheries Service in the January, 2008 "Recovery Plan for Southern Resident Killer Whales (Orcinus orca)," available on the agency's website. The public interest in the protection of the endangered orcas is best furthered by ensuring that the goals and objectives of the recovery plan are met. The Court may therefore take into account defendants' observance of the goals and objectives in the recovery plan when assessing the public interest factor with respect to the requested preliminary injunction.

## CONCLUSION

TEMPORARY RESTRAINING ORDER - 6

As plaintiffs' likelihood of success on the merits cannot be determined at this time, and as plaintiffs have demonstrated only the possibility, rather than probability, of harm, plaintiffs' request for a temporary restraining order has been DENIED as to the request to halt construction activities by defendant Northwest Aggregates at this time. However, this ruling may be reconsidered at the preliminary injunction hearing if evidence is produced that the monitoring plan has not been effective.

DATED this 5 Day of January 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

TEMPORARY RESTRAINING ORDER - 7